[No. A071273. First Dist., Div. Five. Jan. 31, 1996.]

TODD ERNEST NIENHOUSE, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Charles H. James, Public Defender, Paul Mariano and Ron Boyer, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Joan Killeen and Laurence K. Sullivan, Deputy Attorneys General, for Real Party in Interest.

OPINION

HANING, J.—Petitioner Todd Ernest Nienhouse is charged with several possessory drug and firearm offenses. He moved to dismiss the information (Pen. Code, § 995)[1] on the ground that he had been denied a substantial right at his preliminary hearing. The magistrate refused to allow petitioner to elicit exculpatory hearsay evidence on cross-examination of the sole prosecution witness, a police officer, on the ground that Proposition 115, the Crime Victims Justice Reform Act, permits the use of hearsay only by the prosecution. The superior court denied the motion, apparently agreeing with the magistrate. Petitioner seeks a writ of prohibition (§ 999a) to restrain further prosecution on the information. We stayed trial, issued an order to show cause in lieu of an alternative writ, and heard oral argument. We conclude that a defendant has the right to introduce exculpatory evidence under certain circumstances at a preliminary hearing, but that this defendant is not entitled to relief. Accordingly, we discharge the order to show cause and deny the writ.

BACKGROUND

The sole witness at the preliminary hearing was Walnut Creek Police Officer Tim Schultz, an officer of seven years' experience then assigned to the Contra Costa County Narcotic Enforcement Team. In early January 1995, Schultz executed a search warrant for a warehouse in the City of Pacheco. The warehouse was divided into a ground-level recording studio, consisting of a band room and a sound booth, and an upper-level area

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

consisting of a large room and a smaller room apparently used as a bedroom. No one was present at the time Schultz began executing the warrant.

In the small bedroom Schultz found indicia of petitioner's residence, quantities of methamphetamine and marijuana, and various items of drug packaging paraphernalia. He also found a loaded operable shotgun and several bullets for a .25-caliber automatic pistol. Other indicia of petitioner's residence were found on a table in the larger room adjacent to the small bedroom.

Sometime during the search the owner of the building, Aaron Pearson, arrived and told Schultz that he rented the building to Jeff Whitt, a band-leader. Schultz found two items indicative of Whitt's residence at the warehouse, and concluded that possibly both Whitt and petitioner lived there. Pearson's mother then arrived at the warehouse and informed Schultz that Whitt leased the premises and sublet them to petitioner. Schultz could not recall fingerprinting any of the items found and seized at the warehouse.

Mr. Pearson told Schultz that when petitioner was not staying at the warehouse he stayed at the nearby home of his girlfriend. Schultz went to that residence and discovered an automobile which was depicted in a photograph in the small warehouse bedroom. Schultz searched the car and found a loaded .25-caliber automatic pistol matching the ammunition found in the warehouse, plus indicia of petitioner's ownership of the car.

Schultz knocked on the door of the residence; petitioner answered and came outside. Petitioner spoke to Schultz for about five minutes. On cross-examination, Schultz was asked by petitioner's counsel to relay the content of petitioner's statements. The prosecutor objected on the ground of hearsay. Petitioner responded that the hearsay testimony was permitted by Proposition 115. The magistrate concluded that hearsay could only be introduced by the prosecution, not by the defense. However, petitioner made no offer of proof before the magistrate as to the content of his statements to the officer. The Attorney General all but concedes that the statements petitioner made to Schultz were exculpatory.

Petitioner was held to answer and later arraigned in superior court on felony charges of possession of marijuana for sale (Health & Saf. Code, § 11359); possession of methamphetamine for sale (Health & Saf. Code, § 11377, subd. (a)); and possession of methamphetamine while in the imme-diate personal possession of a loaded operable firearm, to wit, the shotgun (Health & Saf. Code, § 11370.1); plus misdemeanor charges of carrying a concealed firearm in a vehicle (§ 12025, subd. (a)(1)); and carrying a loaded firearm in a vehicle (§ 12031, subd. (a)).

Petitioner moved to dismiss the information, contending he had been unduly prevented by the magistrate from eliciting exculpatory hearsay on cross-examination of Officer Schultz to defeat a finding of probable cause. The superior court denied the motion, apparently agreeing with the magistrate that only the prosecution, not the defense, had the right to introduce hearsay under the applicable provision of Proposition 115. In denying the motion, however, the superior court thoughtfully observed that the issue presented "an interesting problem."

This petition followed.

## Discussion

Proposition 115 was passed by the voters as an initiative measure in June 1990. The initiative wrought substantial changes in our criminal law. (See generally, *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 340, 342-346 [276 Cal.Rptr. 326, 801 P.2d 1077].) Of present significance is the initiative's impact on the process of preliminary hearings. Proposition 115 added section 30, subdivision (b) to article I of the California Constitution, which declared "In order to protect victims and witnesses in criminal cases, hearsay evidence shall be admissible at preliminary hearings, as prescribed by the Legislature or by the people through the initiative process." Proposition 115 also amended section 872, subdivision (b),[2] to provide that "Notwithstanding Section 1200 of the Evidence Code [the hearsay rule] the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted." The statute further provides that a law enforcement officer testifying to hearsay must either have five years' experience or have completed a training course in the investigation and reporting of cases and testifying at preliminary hearings.

In *Whitman v. Superior Court* (1991) 54 Cal.3d 1063 [2 Cal.Rptr.2d 160, 820 P.2d 262] (*Whitman*), the Supreme Court ruled, as a matter of statutory interpretation, that section 872(b) does not permit the use of hearsay testimony of police officer "readers," i.e., officers "lacking personal knowledge of either the crime or the circumstances under which the out-of-court statements were made" who simply "parrot information contained in a report prepared by another officer who may lack [the] extensive experience or training" required by the statute. (54 Cal.3d at p. 1073.)

Having so interpreted the statute the court went on to reject several constitutional objections thereto, including one based on the due process

---

[2]For convenience, we refer to section 872, subdivision (b), as section 872(b).

clause of the Fourteenth Amendment of the United States Constitution. The petitioner in *Whitman* argued that section 872(b) "impliedly provid[ed]" that only the prosecution, and not the defense, could introduce hearsay. *(Whitman, supra,* 54 Cal.3d at p. 1082.) The petitioner claimed the statute's lack of reciprocity ran afoul of *Wardius* v. *Oregon* (1973) 412 U.S. 470, 474-479 [37 L.Ed.2d 82, 87-90, 93 S.Ct. 2208], which held Oregon's nonreciprocal notice-of-alibi scheme violated due process.

Our Supreme Court found *Wardius* inapplicable to section 872(b): "We find no similar unfairness here for, properly construed, the new hearsay statute contains no broad grant of authority to the prosecutor to rely on hearsay evidence. The section merely specifies a further, limited exception to the general hearsay exclusionary rule of Evidence Code section 1200, by allowing a probable cause finding to be based on certain hearsay testimony by law enforcement officers having specified experience or training. In light of the specialized nature of the exception, we see nothing fundamentally unfair in failing to provide some similar hearsay exception favoring the defense. (Indeed, although we leave the question open, the new provision might be interpreted as permitting *the defendant* to call a law enforcement officer to relate statements which might rebut a finding of probable cause.)" *(Whitman, supra,* 54 Cal.3d at p. 1082.)

We answer the question left open in *Whitman* with a qualified "yes."

■ We begin with the cardinal rule of statutory interpretation. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.]" *(People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].) The same principle applies to the interpretations of statutes adopted by initiative. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].)

■ Section 872(b) speaks specifically of "testimony of a law enforcement officer relating *the statements of declarants* made out of court . . . ." (Italics added.) The Evidence Code defines "declarant" as "a person who makes a statement." (Evid. Code, § 135.) We see no qualification in the statutory language omitting a criminal defendant from the definition of "declarant." After reciting this statutory language in its *Whitman* opinion the

Supreme Court observed: "As the Legislative Analyst described it to the voters, the intent underlying this provision was to allow introduction of 'out-of-court statements' at preliminary hearings if those statements are 'introduced through the testimony of certain trained and experienced law enforcement officers.' (Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 5, 1990) p. 33.) *As the People observe, the section and its use of the term 'declarants' is not limited to the statements of civilian or citizen witnesses but would include the statements or reports of any persons, including . . . law enforcement officers . . . ."* (*Whitman, supra,* 54 Cal.3d at p. 1073, italics added.)

The *Whitman* court accepted the broadest definition of "declarant," specifically rejecting the argument of Justice Kennard's separate opinion that the court should interpret "declarant" to refer only to "citizen" declarants and not officers of the law. "The statutory language contains no such limitation . . . ." (54 Cal.3d at p. 1075; accord, *Hosek v. Superior Court* (1992) 10 Cal.App.4th 605, 607, 609 [12 Cal.Rptr.2d 650] [observing ". . . there is no limitation whatsoever on the 'declarants' whose extrajudicial statements may be received in evidence in a preliminary examination," and holding that "declarant" in section 872(b) cannot be interpreted to exclude declarants who are forensic experts].) Indeed, it was only from *other* portions of section 872(b), the provision for experience and training of the testifying officer, that the *Whitman* court reached its ultimate holding that the statute precluded "readers" who lacked personal knowledge of the substance of their testimony.

Including a defendant within the compass of the definition of "declarant" is not only consistent with the plain meaning of statutory language, but is in harmony with the Supreme Court's comment when it left the question open of the defense's ability to introduce hearsay under section 872(b). (*Whitman, supra,* 54 Cal.3d at p. 1082, quoted *ante.*) If the Supreme Court were not leaning toward the view that the defense had that right, one would assume that the sentence both raising the question gratuitously then leaving it open would have been left out of the opinion.

We also look to other language of the statute: "the finding of probable cause may be based in whole or in part upon" (§ 872(b)) the hearsay testimony of a qualified law enforcement officer. Probable cause, like guilt at a trial, is fluid until the evidence is concluded and the trier of fact—here, the magistrate—has weighed the evidence and reached a conclusion. Probable cause is not carved in stone upon the incriminating testimony in the direct examination of the first prosecution witness. The witness's credibility or perspicacity may be undermined on cross-examination. The witness's

testimony may be found to conflict with physical evidence or the testimony of other witnesses. The witness may relate what taken alone seems an incriminating admission by the defendant, which is later explained away by exculpatory evidence. (For instance, drugs may be found on premises bearing the indicia of residence by the defendant. The defendant may introduce evidence that he had been out of town for some time and did not know of the drugs, and that other persons also lived in or had access to the premises.) Depending on the credibility of the testimony and the circumstances of the case, probable cause would be found present or absent by the magistrate at the *conclusion* of the hearing.

A defendant has the statutory right to call witnesses to present exculpatory evidence at a preliminary hearing. (§ 866; *Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 667 [94 Cal.Rptr. 289, 483 P.2d 1241].) The purpose of this right is obvious: to permit the defendant to rebut the People's evidence of probable cause and persuade the magistrate not to make a probable cause finding. One of " '[t]he purpose[s] of the preliminary hearing is to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and expense of a criminal trial. Many an unjustifiable prosecution is stopped at that point where the lack of probable cause is clearly disclosed.' " (*People* v. *Elliot* (1960) 54 Cal.2d 498, 504 [6 Cal.Rptr. 753, 354 P.2d 225], overruled on other, unrelated grounds in *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 528-529 [165 Cal.Rptr. 851, 612 P.2d 941]; *Jones* v. *Superior Court, supra,* 4 Cal.3d at p. 668.) When section 872(b) speaks in terms of a "finding of probable cause" being based "in whole or in part" on hearsay testimony, it necessarily contemplates the role of exculpatory defense evidence to defeat that finding. The very voters who enacted section 872(b) must be considered to have been aware of this defense right. Another provision of Proposition 115 was specifically directed to section 866; rather than eliminate the defense right, the voters amended section 866 to require an offer of proof for a witness called by the defense. Indeed, section 866 has been interpreted to allow the defense to call the very declarants relied upon by the People's law enforcement witnesses. The People cannot rely on an out-of-court declarant to make a showing of probable cause and then prevent the defense from calling the declarant as a witness, so long as the offer of proof requirement is satisfied. (*People* v. *Erwin* (1993) 20 Cal.App.4th 1542, 1550 [25 Cal.Rptr.2d 348].)

We thus conclude that the plain language of section 872(b) permits the admission of hearsay by the defense to rebut or foreclose a finding of

probable cause.[3] However, we hasten to add that the defense enjoys no broad general right to disregard the hearsay rule. Section 872(b) is limited to qualified law enforcement officer testimony. The defense may thus introduce hearsay in its favor from a law enforcement officer, either on cross-examination of a People's witness or as its own witness if the requirements of section 866 are met. (See *People* v. *Erwin, supra,* 20 Cal.App.4th at pp. 1550-1551.)

The People argue that our ruling today is inconsistent with the purpose and intent of Proposition 115, which was to restore a balance to a criminal justice system perceived as being too oriented to defendants' rights. Proposition 115 is a many faceted measure, working great changes in the law much more significant and in pursuit of its general purpose than the use of hearsay at preliminary hearings. The *Whitman* court observed that section 872(b) provided only a limited exception to the hearsay rule. All we say is that exception can only fairly be enjoyed by both sides to the adversarial process. We do not say that the defense can call witness after witness in a parade of self-serving hearsay in disregard of section 866. We hold only that if the People can elicit incriminating hearsay from a law enforcement officer, the defense can elicit exculpatory hearsay from a law enforcement officer. What is sauce for the People's goose is sauce for the defendant's gander.

Any other conclusion would work an unfairness and a *lack* of balance in the criminal process, which we will not attribute to the voters. Suppose, for example, a defendant is arrested for a possessory crime, and gives a two-sentence statement to the arresting officer. In the first sentence the defendant admits access to and control over the premises, but in the second sentence he denies knowledge or awareness of the contraband because he has just returned from an extended trip out of the state and has not yet entered the premises since his return. Under the People's view, the officer could testify as to the first statement, which helps the People, but not the latter, which helps the defendant. We do not believe the voters who passed Proposition 115 intended to engraft into the law this kind of Kafkaesque compartmentalization of truth.

We further note that Proposition 115's general anticrime, provictim purpose has not been considered a blanket ban on any process or procedure favorable to the defendant. In *People* v. *Erwin, supra,* 20 Cal.App.4th 1542,

---

[3]"There seems no good reason to disallow defense hearsay. Section 872(b) simply provides that the finding of probable cause may be based on hearsay. In general, the courts should be reluctant to find that one party is granted significant rights denied the other without a clear statutory direction. None exists here and, therefore, the question left open in *Whitman* should be answered in the affirmative." (Simons, Cal. Preliminary Examinations and 995 Benchbook (1995/1996 ed.) § 5.1.8, p. 5-6.)

the court specifically rejected the Attorney General's argument that allowing the defense to call the People's hearsay declarants as their own witnesses violated the spirit of the initiative measure.

Petitioner, however, is not himself entitled to the advantage of our ruling. Having failed to make an offer of proof before the magistrate, he has failed to properly establish for appellate review that his statements were in fact exculpatory, and to what extent. This court thus cannot determine whether petitioner was denied a substantial right at his preliminary hearing, and we cannot issue a writ.

At oral argument petitioner claimed Evidence Code section 354, subdivision (c) exempted him from the requirement of an offer of proof. Evidence Code section 354 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means; [¶] (b) The rulings of the court made compliance with subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination."

We disagree with petitioner's interpretation of Evidence Code section 354. Subdivision (c)'s exception to the offer of proof is simply a reaffirmation of the constitutional right of cross-examination. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15.) However, cross-examination is limited to the scope of the direct examination. (Evid. Code, § 773.) Officer Schultz did not testify on direct examination concerning any conversations with petitioner nor any statements petitioner may have made. Petitioner's inquiry to Officer Schultz about his statements was therefore not proper cross-examination, but an attempt to offer affirmative evidence of his own. In order to preserve the exclusion of this evidence for appellate review, an offer of proof was necessary. (*People* v. *Demond* (1976) 59 Cal.App.3d 574, 588 [130 Cal.Rptr. 590].)

" 'Before an appellate court can knowledgeably rule upon an evidentiary issue presented, it must have an adequate record before it to determine if an error was made.' [Citation.]" (*People* v. *Rodrigues* (1994) 8 Cal.4th 1060, 1176 [36 Cal.Rptr.2d 235, 885 P.2d 1].) "The offer of proof exists for the benefit of the appellate court. The offer of proof serves to inform the appellate court of the nature of the evidence that the trial court refused to

receive in evidence. . . . The function of an offer of proof is to lay an adequate record for appellate review. . . ." (1 Wigmore on Evidence, § 20a (Tillers rev. ed. 1983), p. 858.) ▮ Here, we must determine whether the exclusion of the alleged exculpatory hearsay denied petitioner a substantial right at his preliminary hearing—not whether it was simply error. (See *Currie* v. *Superior Court* (1991) 230 Cal.App.3d 83, 99-100 [281 Cal.Rptr. 250]; see also *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812, 822-823 [330 P.2d 39] (conc. opn. of Carter, J.).)

Because petitioner made no offer of proof, it is impossible to assess the impact of the excluded evidence on the result of the preliminary hearing or on petitioner's substantial rights. The excluded evidence could have been anything from a simple *I did not do it* to a plausible, detailed explanation of petitioner's lack of knowledge or dominion over the drugs and weapon found in the warehouse. Under these unillumined circumstances, this court cannot determine whether petitioner was denied a substantial right at his preliminary hearing, and we cannot issue a writ.

### Disposition

The order to show cause is discharged. The petition for writ of prohibition is denied. The stay of proceedings heretofore imposed shall dissolve upon finality of this opinion as to this court.

Peterson, P. J., and King, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied April 25, 1996.