Filed 10/27/20  P. v. Grace CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>v.<br><br>JAMARCUS MANUEL GRACE,<br>        Defendant and Appellant. | A157906<br><br>(Solano County Super.<br> Ct. No. VCR231320) |

After defendant Jamarcus Manuel Grace was arrested for stealing a car, the trial court revoked his probation at a joint hearing held to consider whether he had violated probation and whether he should be held over to answer charges alleged in a new felony complaint.  Grace later moved to vacate the probation violation finding, claiming the court should have admitted statements he offered that he had made to a police officer at the time of his arrest as reliable hearsay.  The court held Grace had forfeited this claim by failing to raise it at the joint hearing.  Grace argues the court's forfeiture ruling was in error and that he was denied due process because the court at the joint hearing barred his hearsay statements without considering their admissibility for purposes of determining whether he had violated probation.  He further argues that if the court did not err in finding forfeiture, we must reverse nonetheless, because he received ineffective assistance of counsel.

1

We conclude the court's forfeiture ruling was correct and that Grace has not shown he received ineffective assistance of counsel. We, therefore, affirm.

## BACKGROUND

### I.

### *The Allegations Against Grace*

This case is an appeal from the Solano County Superior Court's finding that Grace violated probation after he was convicted of two offenses in a case that originated in Southern California. In April 2017, the Orange County District Attorney filed a felony complaint charging Grace with pimping, pandering and possession of a firearm by a felon (Pen. Code, §§ 266h, 266i & 29800 respectively) and alleging that Grace had suffered two prior prison commitments. Grace pled no contest to, and was found guilty of, conspiracy to commit pimping and possession of a firearm by a felon, and he admitted to the two priors. The court sentenced him to four years in state prison, awarded certain credits, suspended execution of the sentence and placed Grace on probation.

In January 2018, Grace's probation was transferred to Solano County and a case was opened there (probation case). In November 2018, the Solano County District Attorney filed a felony complaint charging Grace with a new offense, the unlawful driving or taking of a vehicle (Veh. Code, § 10851), based on a July 12, 2018 incident (felony complaint case). This incident was also the basis for the prosecution's request that the court find that Grace had violated his probation in the probation case (and also violated probation in a preceding case). Without objection from Grace, the court ordered that the preliminary hearing on the felony complaint and the hearing on the probation violation would be heard together in one joint hearing.

2

## *The Joint Hearing*

The joint hearing occurred on February 26, 2019. The owner of a black Chevy Tahoe with the license plate number "7JEX081" testified that for a time in 2018 he rented a house in Fairfield, California from a woman who also lived there, and who was Grace's friend. Grace "frequently" came over to the house. The witness had never allowed Grace to drive his Tahoe. Around July 1, 2018, he noticed that the keys to his Tahoe were missing, and that other things were missing from the house. A few days later, on July 4, 2018, he moved out of the house and noticed that the title to his Tahoe was missing as well. On the morning of July 9, 2018, he used a spare set of keys to drive the Tahoe to a storage facility in the area. At around 5:30 p.m., he returned to where he had parked, and the Tahoe was gone. He reported it missing to police the next day.

Vallejo Police Officer Anthony Abeyta testified that at around 11:30 a.m. on July 12, 2018, he went to the scene of a vehicle stop in Vallejo. There, he was told by the officer who had stopped the vehicle, a black Chevy Tahoe with the license plate number "5DTP110," that it was listed on the department's "hot sheet" and had been confirmed to be stolen. Abeyta saw three people in the Tahoe. He contacted Grace, who was sitting in the driver's seat, and ordered him to exit the vehicle. Grace got out and was cooperative. During his investigation, Abeyta located the title to the Tahoe, which listed its license plate number as "5JBX081."

Near the end of defense counsel's cross-examination of Abeyta, the prosecution objected on hearsay grounds to Abeyta testifying about what Grace told him at the vehicle stop. After soliciting the defense counsel's response to this objection, the court sustained it as follows:

"[DEFENSE COUNSEL]: Mr. Grace asked you what was going on, right?

"[ABEYTA]: Yes.

"[DEFENSE COUNSEL]: And then you asked him where he bought the car, right?

"[ABEYTA]: Correct.

"[DEFENSE COUNSEL]: And he told you that he bought it off of University Avenue?

"[THE PROSECUTOR]: Objection, hearsay, move to strike.

"THE COURT: Care to be heard?

"[DEFENSE COUNSEL]: Yes. I cite Nienhouse versus Superior Court.

"THE COURT: Sustained.

"[DEFENSE COUNSEL]: My client's statement via [Proposition] 115 testimony.

"THE COURT: It's sustained. Next question.

"[DEFENSE COUNSEL]: I have no further questions. The rest of my questions are regarding my client's statement."

At the conclusion of the hearing, the court ordered that Grace be held over to answer for the felony complaint and found he had violated probation. The court reasoned: "[I]t appears that Mr. Grace was driving the vehicle. The owner of the vehicle allegedly . . . claims that Mr. Grace did not have permission to have his car, . . . didn't really claim to know him but just knew that he was friends of and had access to the home of his landlord/roommate for a period of time. [¶] Missing is the title, missing is his keys. So, that is one possibility as to how the defendant may have had his car. And there may be another legal way. But the fact he has access certainly is more telling than not as opposed to not knowing this person at all."

### *Grace's Motion to Vacate the Preliminary Hearing Order*

The prosecution filed an information containing the count alleged in the felony complaint, and Grace moved under Penal Code section 995[1] to dismiss the count for lack of probable cause. He argued that the preliminary hearing court had prejudicially erred under *Nienhouse v. Superior Court* (1996) 42 Cal.App.4th 83 (*Nienhouse*) in excluding Abeyta's testimony about Grace's hearsay statements to him. *Nienhouse* held that, consistent with Proposition 115, which made constitutional and statutory amendments that allowed the admission of hearsay evidence in preliminary hearings, the defense at a preliminary hearing could admit hearsay in its favor, including through a law enforcement officer or a witness for the People, to rebut or foreclose a finding of probable cause. (*Nienhouse, supra,* 42 Cal.App.4th at pp. 88-93.) Grace's counsel submitted a declaration in support of the motion in which she stated what she anticipated Officer Abeyta would have testified to (based on Abeyta's police report and body camera recording) if she had been allowed to ask him about Grace's hearsay statements at the scene. This included that Grace said he had bought the Tahoe within the last week on University Avenue in Berkeley from a man named "Raul" for $1,500, and that its title was in his jacket in the car. Counsel further asserted that Abeyta would have testified that he told Grace the car was stolen; that Grace repeated that he had title to it; that Grace said he was on probation and would not be riding around in stolen cars; that Grace said he bought cars,

---

[1] Penal Code section 995 states that an information shall be set aside if "before the filing thereof the defendant had not been legally committed by a magistrate" or "the defendant had been committed without reasonable or probable cause." (Pen. Code, § 995, subd, (a)(2)(A) & B).)

"flip[ped]" them and sold them; and that Abeyta found the car's title in Grace's jacket.

The court granted Grace's motion and dismissed the information without prejudice upon concluding that Grace had been denied his right to cross-examine Abeyta at the preliminary hearing about Grace's statements at the scene. The court stated it was granting the motion regarding the information only, and not regarding the probation violation finding.

## III.

### *Grace's Motion to Vacate the Probation Violation Finding*

Grace subsequently also moved to vacate the court's probation violation finding. He argued the joint hearing was fundamentally unfair and denied his right to due process. At the hearing on the motion, presided over by the judge who had presided over the joint hearing, Grace's counsel argued he had been denied a substantial right by the court's exclusion of Abeyta's testimony about his hearsay statements at the scene, which would have shown that he had lawfully purchased the Tahoe and was in possession of its title. When the court pointed out that Grace could have testified himself, his counsel said, "Well, yes. But even in that case, I still wanted to introduce the statement that he gave at the time to the officer." Counsel agreed with the court's recollection that the parties had not discussed whether Grace's statements at the scene should have been admitted as reliable hearsay for purposes of the probation violation. She said she filed her motion because of her legal research, and that "this is the first time this has come up for me," apparently a reference to the joint hearing procedure used by the court.

The prosecutor argued that Grace had waived his right to challenge the court's probation violation finding because his counsel's only argument for admission of Grace's hearsay statements at the joint hearing was based on

6

*Nienhouse* and Proposition 115, which apply only to preliminary hearings. The prosecutor further argued that he did not see how the court could have found the statements admissible for purposes of the probation violation.

The court said they had not done the "analysis and drill" about whether Grace's hearsay statements to Abeyta were reliable and therefore admissible for purposes of the probation violation. The court continued, "That was never raised and never discussed. And it appears, in my opinion, to have been too late." Grace's counsel agreed it had not been addressed and added that Grace should not be penalized for her failure to object. She continued, "After the fact I researched this issue further, and I am bringing it now. I think that—and, again, maybe we didn't engage in the analysis as to how the statement would have come in at the probation violation hearing. But I just don't think it's as clear-cut as the prosecution makes it appear that it automatically would not have come in."

The court denied Grace's motion, stating that it thought "the record is well documented and litigated by the parties." Concerned about the serious nature of the crimes Grace had committed in Orange County, the court rejected his counsel's argument (and the probation department's recommendation) that it reinstate probation and sentenced Grace to four years in state prison, with credits.

Grace filed a timely notice of appeal.

## DISCUSSION

### I.

### *The Court Correctly Ruled That Grace Had Forfeited His Claim.*

Grace argues that the trial court erred in ruling that, because he failed to raise the issue, he forfeited his claim that his hearsay statements should have been admitted in the probation violation hearing. We disagree.

7

Generally, " 'questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal.' " (*People v. Seijas* (2005) 36 Cal.4th 291, 301.)  Thus, a party "may not argue on appeal that the court should have excluded the evidence for a reason different from the one stated at trial.  A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435.)  "What is important is that the objection fairly inform the trial court . . .  of the specific reason or reasons" asserted regarding the admissibility of the evidence.  (*Ibid*.)

Grace makes several arguments for why the court erred in finding forfeiture.  First, he argues the issue of forfeiture was a "close and difficult" one that included an "ambiguity in the record" about the scope of the argument his counsel made at the joint hearing for the admission of his hearsay statements.  We disagree.  At the joint hearing, Grace's counsel's only stated bases for the admission of his statements to Abeyta at the scene of the incident were citations to *Nienhouse* and Proposition 115, which the parties agree apply only to preliminary hearings and not to probation violation hearings.  Indeed, at the subsequent hearing on Grace's motion for the withdrawal of the probation violation finding, Grace's counsel acknowledged that she had argued for admission of the hearsay statements with regard to the preliminary hearing only.

Grace further characterizes the prosecutor's hearsay objection as "insufficiently specific."  Again, we disagree.  The objection was to the admission of the evidence as hearsay, period.  It was not qualified or limited

8

in any way.  The only reasonable way to construe it is that it was made, and sustained, for purposes of both aspects of the joint hearing.[2]

Grace next argues the complexity of a joint preliminary and probation violation hearing and the "obscure" nature of the area of law involved excuses his forfeiture.  This, too, is unpersuasive.  Whatever the complexity of the joint hearing, Grace did not object to it and had seven weeks to prepare for it.  And his counsel had to have known that the admission of Grace's statements to Abeyta could well be challenged as hearsay at the joint hearing.  Further, the different legal standards for admission of hearsay in preliminary hearings and probation violation hearings were clear and long-standing at the time.  The law regarding preliminary hearings was discussed in *Nienhouse*, *supra*, 42 Cal.App.4th at pages 88 to 93 in 1996 and, as Grace notes by his citation to it in his opening brief, the law regarding probation violation hearings was addressed in *People v. Arreola* (1994) 7 Cal.4th 1144 in 1994.  More specifically, as this court stated more than three decades ago, " '[t]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.' [Citation.]  Despite the relaxed rules of evidence

_____

[2] In a related argument regarding the merits of his claim, Grace contends the court abused its discretion at the preliminary hearing by failing to consider the admissibility of his statements to Abeyta for purposes of determining whether he had violated probation.  To support this argument, he points to the court's comments at the hearing on his motion to vacate the probation violation finding, such as that they had not done the "analysis and drill" about whether Grace's hearsay statements to Abeyta were reliable hearsay and, therefore, admissible in the probation violation aspect of the joint hearing.  We disagree that the court's comments show it did not consider the prosecution's objection for purposes of the probation violation aspect of the hearing.  Rather, the court indicated it did not consider whether the evidence constituted reliable hearsay.  Nor should it have, in light of Grace's failure to argue this was the case.

9

governing probation revocation proceedings, a court is not permitted ' "to admit unsubstantiated or unreliable evidence as substantive evidence . . . ." ' " (*People v. Brown* (1989) 215 Cal.App.3d 452, 454.) However, "[a]s long as hearsay testimony bears a substantial degree of trustworthiness it may legitimately be used at a probation revocation proceeding. [Citations.]  In general, the court will find hearsay evidence trustworthy when there are sufficient 'indicia of reliability.' [Citation.]  Such a determination rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." (*Id*. at pp. 454-455.)

Finally, Grace argues that the trial court's sustaining of the prosecution's objection after his counsel cited *Nienhouse* and Proposition 115, and the court's instruction that defense counsel ask her next question, rendered it futile for him to seek admission of his hearsay statements in the probation violation aspect of the hearing.  He relies primarily on *People v. Hill* (1998) 17 Cal.4th 800, in which our Supreme Court excused Hill from his trial counsel's failure to repeat, or adequately state the grounds for, the same objection for every instance of a prosecutor's "constant barrage of . . . unethical conduct." (*Id*. at pp. 820-821.)  The *Hill* court concluded that the prosecutor's constant misconduct, coupled with the trial court's failure to rein in the prosecutor's excesses, created "a trial atmosphere so poisonous" that the defense was "thrust upon the horns of a dilemma," since it could either object further and "risk[] repeatedly provoking the trial court's wrath" over so-called " 'meritless' " objections or decline to object and subject the defendant to the prejudice caused by the prosecutor's misconduct. (*Id*. at p. 821.)

*Hill* has no relevance here.  Grace acknowledges that he could have argued that his statements to Abeyta were admissible as reliable hearsay in

10

the probation violation aspect of the hearing, an entirely different argument than the one indicated by his counsel's reference to *Nienhouse* and Proposition 115. The trial court gave no indication that it would reject this argument. To the contrary, the court likely would have considered such an argument because it invited Grace's counsel to respond to the prosecution's objection before it ruled. Further, Grace's counsel faced no particular dilemma in deciding whether to argue admissibility regarding the probation violation aspect of the hearing.

The present circumstances are more analogous to those considered by our Supreme Court in *People v. Livingston* (2012) 53 Cal.4th 1145. There, Livingston argued that the trial court's overruling his objection to admission of a videotape meant his objection to certain testimony would have been futile. (*Id*. at p. 1160.) Our Supreme Court rejected the argument because, "[w]ith no clear linkage between these two pieces of evidence, defendant could not have reasonably concluded the denial of his motion to exclude the videotape necessarily rendered futile a different motion to exclude [the] testimony on confrontation or hearsay grounds." (*Id*. at p. 1161.) Similarly, here, the court's rejection of Grace's *Nienhouse*/Proposition 115 argument gave no indication how it would rule on the entirely different argument that Grace's hearsay statements to Abeyta were reliable hearsay and therefore admissible for purposes of the probation violation aspect of the joint hearing.

In short, the court correctly ruled that Grace had forfeited any claim that his hearsay statements to Abeyta at the scene of the incident should have been admitted for the purposes of determining whether he had violated probation. Therefore, we will not discuss the merits of that claim.

### *Grace Does Not Establish Ineffective Assistance of Counsel.*

Grace next argues that the trial court's decision to disallow his purportedly exculpatory hearsay statements through Abeyta's testimony, as well as counsel's failure to put Grace on the stand under the protections provided by *People v. Coleman* (1975) 13 Cal.3d 867 was the result of his counsel's ineffective assistance. He contends that counsel's lack of preparation to put on an effective defense for purposes of both the preliminary hearing and probation violation aspects of the joint hearing prejudiced him in his probation case.

"To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.] When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.] Even where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., that, ' " 'but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " ' " (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

### A. Counsel's Failure to Argue Grace's Hearsay Statements Were Admissible

To the extent Grace claims his trial counsel's failure to argue his hearsay statements to Abeyta were admissible in the probation violation aspect of the joint hearing constituted ineffective assistance of counsel, the claim fails for lack of prejudice. Assuming for the sake of argument that counsel neglected to argue at the joint hearing that Grace's statements were

reliable hearsay because of her lack of knowledge and experience rather than for a tactical reason (as she later suggested was the case), and assuming for the sake of argument that this was a deficient performance by counsel, Grace fails to show he was in any way prejudiced by his counsel's neglect.

Any such argument by Grace must contend that his counsel should have been allowed to offer Grace's hearsay statements to Abeyta for their truth, i.e., that he held lawful title to the Tahoe he was found in and had purchased the car a week before, and that consideration of these statements would have led to a better result in the probation case. But he offers nothing to show the trial court would have admitted his statements or been influenced by them in Grace's favor.

We conclude the court undoubtedly would have excluded Grace's hearsay statements to Abeyta, if only because nothing indicates they were trustworthy. Generally, hearsay statements are only admissible in a probation violation hearing if the " ' "hearsay testimony bears a substantial degree of trustworthiness . . . . In general, the court will find hearsay evidence trustworthy when there are sufficient 'indicia of reliability." ' " (*People v. Gomez* (2010) 181 Cal.App.4th 1028, 1037, quoting *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066.) No such indicia exist here. To the contrary, the trustworthiness of Grace's statements of innocence to a police officer investigating his possible criminal conduct are plainly suspect, particularly when considered in light of Abeyta's testimony that Grace's vehicle had a license plate bearing a number that was different from the number listed on its title.

Therefore, Grace fails to show prejudice by his counsel's failure to object, which is fatal to any ineffective assistance of counsel claim based on this failure.

13

**B. Counsel's Failure to Present Grace's Own Testimony**

We also reject Grace's argument that his trial counsel's failure to have him testify was ineffective assistance of counsel.

*People v. Coleman* declared "as a judicial rule of evidence that henceforth upon timely objection the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges, save for the purposes of impeachment or rebuttal where the probationer's revocation hearing testimony or evidence derived therefrom and his testimony on direct examination at the criminal proceeding are so clearly inconsistent as to warrant the trial court's admission of the revocation hearing testimony or its fruits in order to reveal to the trier of fact the probability that the probationer has committed perjury at either the trial or the revocation hearing." (*People v. Coleman*, *supra*, 13 Cal.3d at p. 889.)

Counsel's failure to call Grace to the stand was not necessarily deficient because she could have concluded that Grace would not make an effective witness, whether or not she knew about *People v. Coleman*. Indeed, at the hearing on Grace's motion for withdrawal of the probation violation finding, counsel implied this was the case when she agreed with the court that she could have called Grace to the stand and then immediately changed the subject to insist that in any event Abeyta's testimony should have been admitted. Grace does not show deficient performance under these circumstances. (See, e.g., *People v. Lucas* (1995) 12 Cal.4th 415, 444 [advising a client not to take the stand "goes to the heart of trial tactics

14

[citations], and for that reason rarely would support a claim of ineffective assistance of counsel"].)

Even if we assume for the sake of argument that counsel was deficient in her performance by failing to have Grace testify at the probation violation hearing, Grace fails to show he was prejudiced by this failure. As the People point out, a claim of ineffective assistance for failure to present defense evidence " 'must be supported by declarations or other proffered testimony establishing both the substance of the omitted evidence and its likelihood for exonerating the accused.' " (*People v. Watts* (2018) 22 Cal.App.5th 102, 118, quoting *People v. Cox* (1991) 53 Cal.3d 618, 662 [disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22]; accord, *People v. Bolin* (1998) 18 Cal.4th 297, 334.) Grace does not indicate anywhere what he would have said had his counsel called him to testify, and, even assuming his testimony would have asserted the same facts he asserted to the police officer, a different result is highly unlikely. Again, the different license numbers on the plates that were on the Tahoe and on the title remain unexplained. That, coupled with the fact that Grace knew the owner of the Tahoe and had ready access to the owner's car keys and title renders any claim that he purchased the car from someone else highly implausible. Therefore, we reject Grace's claim of prejudice as nothing more than speculation. (See, e.g., *In re Cox* (2003) 30 Cal.4th 974, 1016 [defendant claiming ineffective assistance " 'must establish "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel" ' "]; see also *Bolin*, at p. 334 ["The record does not establish defense experts would have provided exculpatory evidence if called, and we decline to speculate in that regard as well"].)

## DISPOSITION

The judgment is affirmed.

_____

                                    STEWART, J.


We concur.


_____

RICHMAN, Acting P.J.


_____

MILLER, J.


*People v. Grace* (A157906)

17