[No. B148019. Second Dist., Div. Five. May 31, 2001.]

STEVE COOLEY, as District Attorney, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DWAYNE EDWARDS, Real Party in Interest.

## COUNSEL

Steve Cooley, District Attorney, Patrick D. Moran and Fred Klink, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Michael P. Judge, Public Defender, Albert J. Menaster, Nancy Ramsyer and Jack T. Weedin, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**ARMSTRONG, J.**—In proceedings authorized by Welfare and Institutions Code section 6600 et seq.,[1] the district attorney petitions for an extraordinary writ of mandate. He seeks an order directing the trial court not to hold a scheduled probable cause hearing on a petition to recommit real party as a sexually violent predator. We conclude that the trial court correctly interpreted the Sexually Violent Predators Act as ensuring real party in interest a probable cause hearing, and so deny the petition.

### FACTS AND PROCEDURAL HISTORY

Real party in interest Dwayne Edwards was civilly committed as a sexually violent predator (SVP) on July 6, 1998. That is, a jury found he had been convicted of a sexually violent offense against two or more victims and that he suffered from a mental disorder making him likely to engage in sexually violent criminal behavior. (§ 6600, subd. (a).) He was committed for a period of two years, the maximum allowed under the SVP statute, to Atascadero State Hospital, where he was to receive a program of treatment. (§§ 6604.1, subd. (a), 6606, subd. (a).) As the commitment period drew to a close, the district attorney filed a petition to commit Edwards for another two-year period. The petition was supported by the reports of two psychologists designated by the state Department of Mental Health to evaluate Edwards. They concluded that Edwards continues to suffer a mental disorder leaving him likely to engage in sexually violent predatory criminal behavior in the future.

Edwards filed a motion asking the trial court to set a probable cause hearing on the petition, consistent with the procedure required for initial petitions to commit a person under the SVP statute. (§ 6602.) The district attorney opposed the motion, asserting that recently enacted amendments to the SVP statute indicate a legislative intent to exclude probable cause hearings on petitions to extend a commitment. The trial court disagreed, holding that the Sexually Violent Predators Act requires a probable cause hearing on a petition for recommitment, just as on an initial petition to commit. It set a date for the hearing. The district attorney then filed the instant petition. This court stayed the probable cause hearing, and later issued an order to show cause why the trial court's order setting a hearing should not be vacated.

### DISCUSSION

The procedure for extending an SVP's commitment has not been widely considered by the courts. Prior to September 13, 2000, the SVP statute

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

provided merely that "the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a new petition for commitment under this article . . . ." (Former § 6604.) The few courts that considered the meaning of that provision were usually concerned with the sufficiency of the "new petition" itself, such as whether an adequate number of psychological evaluations supported it or whether it was properly timed in relation to the end of the initial commitment period. (E.g., *People v. Superior Court (Gary)* (2000) 85 Cal.App.4th 207, 215-216 [101 Cal.Rptr.2d 874] [requirement for at least two evaluations recommending commitment applies to petition to extend commitment]; *People v. Superior Court (Ramirez)* (1999) 70 Cal.App.4th 1384, 1389-1390 [83 Cal.Rptr.2d 402] [petition timely regardless of whether a trial on the merits can be completed before original commitment term expires].) Those courts uniformly followed the procedures set out by the SVP statute for initial commitment petitions in considering the petitions to extend the commitment before them. As the court stated in *Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1180 [93 Cal.Rptr.2d 468] (*Butler II*),[2] "the SVPA does not use the term 'petition for recommitment,' but instead refers to 'the filing of a new petition for commitment under this article.' (§ 6604 . . . .) This language indicates that the Legislature intended the procedures for obtaining a 'subsequent extended commitment' to be the same as the procedures for obtaining an initial commitment." (*Butler II, supra,* 78 Cal.App.4th at p. 1180.)

None of those courts specifically addressed whether a probable cause hearing was required on a petition to extend a commitment. Rather, such hearings were conducted as a matter of course. (See *Butler II, supra,* 78 Cal.App.4th at pp. 1177-1178; *Butler III, supra,* 83 Cal.App.4th at pp. 960-961 [absent a probable cause ruling on the merits, amended petitions for recommitment would not be dismissed even though the first versions of those petitions were dismissed and earlier probable cause findings vacated].) Indeed, the district attorney's argument here essentially acknowledges that prior to the recent statutory amendments probable cause hearings were required on petitions to extend a commitment, as his sole assertion is that the amendments did away with such a requirement. The particular amendments he points to are those to sections 6604 and 6604.1. On September 13, 2000, urgency legislation took effect amending section 6604 to state that recommitment might be sought on a "petition for extended commitment," rather

---

[2]Attempts to extend Butler's commitment as an SVP have met with stiff resistance, resulting in repeated trips to the appellate court. At the time of this writing, there were already three published decisions regarding that matter, reported at *People v. Butler* (1998) 68 Cal.App.4th 421 [80 Cal.Rptr.2d 357], *Butler II, supra,* 78 Cal.App.4th 1171, and *People v. Superior Court (Butler)* (2000) 83 Cal.App.4th 951 [100 Cal.Rptr.2d 199] (*Butler III*).

than by a "new petition." (§ 6604.) In addition, a new paragraph was added to section 6604.1, providing, "(b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments. The rights, requirements, and procedures set forth in Section 6603 shall apply to extended commitment proceedings." (§ 6604.1, subd. (b).)

According to the district attorney, those changes effectively abandon the idea that extension of an SVP's commitment must follow the procedure set out for committing the SVP in the first place. He describes sections 6604 and 6604.1 as now presenting a comprehensive scheme for extending the commitment of an SVP. In support of his interpretation, the district attorney argues that changing the type of petition to be filed from a "new petition" to a "petition to extend commitment" is a reaction to the holding of *Butler II*. That is, by deleting the term "new petition" in favor of a different term, the Legislature must have meant to do something besides follow the procedure set for a new petition as directed by the *Butler II* court. That, he asserts, coupled with section 6604.1's specification of only two provisions of the SVP statute that must be followed, signals an intent to establish a new, limited scheme for extending commitments that excludes any provisions not expressly incorporated therein. We cannot agree.

■ The settled rules of statutory construction require that we look to the words of the statute itself as the most reliable indicator of legislative intent. (*People v. Jefferson* (1999) 21 Cal. 4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) If the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. When the language is susceptible of more than one reasonable interpretation, the court may turn to a variety of extrinsic aids to assist in interpretation, such as the ostensible objects to be achieved by the statute, the evils to be remedied, the legislative history, public policy and the statutory scheme of which the statute is a part. (*Ibid.*) And, in construing statutory language, the court will not adopt an interpretation that would produce absurd consequences. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal. 4th 294, 305 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) ■ Applying those principles here, we find that while the recent amendments to the SVP statute do effect a semantic change and highlight two sections of the statute that must be utilized in recommitment proceedings, they do not thereby preclude application of other portions of the statute.

Section 6604 itself indicates that petitions for extended commitment are to be made "under this article," and does not limit itself to the provisions of

section 6604.1. (§ 6604.) Moreover, the legislation that effected the statutory amendments, Senate Bill No. 2018 (1999-2000 Reg. Sess.), stated its intent was to "clarify" that a person may be held beyond the initial two-year commitment period under the statute, not to change the entire recommitment procedure. It also intended to ensure evaluations recommending extended commitments equal the number and quality of those required for an initial commitment, and to provide that "specified existing provisions relating to commitment evaluation standards and to the rights of the person subject to commitment shall also apply with respect to evaluations for extended commitments." (*Ibid.*) Nowhere did the Legislature express an intent to enact an entirely new and exclusive scheme of commitment applicable only to extended commitments.

To the contrary, a review of Senate Bill No. 2018 as a whole reveals that the Legislature was merely tinkering with the SVP statute. It essentially codified the holdings of cases like *Butler II* to guarantee that petitions to extend commitments are supported by a minimum of two psychological evaluations concurring in the need for recommitment, just as is required for the initial commitment. (§ 6604.1, subd. (b).) In addition, it amended section 6603 to include a method for updating evaluations prior to trial, including review of medical and treatment records regarding the SVP's current mental condition, ensuring all commitment proceedings are based on complete and timely information. (§ 6603, subd. (c).) No sweeping change to the procedure for extending a commitment is implied by those changes, nor any intent to exclude procedures otherwise mandated by the SVP statute. Rather, the amendments to section 6604.1 reflect application of the particular changes addressed in Senate Bill No. 2018 to recommitment proceedings as well as to initial commitment proceedings.

Indeed, as the trial court pointed out, there are several provisions of the SVP statute not mentioned in section 6604.1 that must apply to recommitment procedures to effect a complete procedural scheme, undermining the district attorney's argument. For example, section 6600.05 specifies where SVP's are to be housed. Section 6604 provides that the state's burden at trial is to prove the person is an SVP beyond a reasonable doubt. Section 6606 directs that, once committed, an SVP must be provided with a program of treatment for the mental condition that renders him or her an SVP. (§ 6606, subd. (a).) And, sections 6605 and 6608 provide a method by which an SVP may petition for early release from commitment should his or her mental condition abate sufficiently. It is nonsensical to suggest that those provisions of the SVP statute no longer apply to persons subject to extended commitment. Such provisions are necessary to a meaningful method of committing SVP's in a manner that will ensure their treatment while protecting the health and safety of others. (§§ 6600, subd. (a)(1), 6606, subd. (a).)

Similarly, section 6602's promise of a probable cause hearing extends to a person subject to a petition for extended commitment. That section requires a hearing to determine whether there is probable cause to believe the person named in the petition is likely to engage in sexually violent and predatory behavior if released from custody. (§ 6602, subd. (a).) "No person may be placed in a state hospital pursuant to the provisions of this article until there has been a determination pursuant to Section 6601.3 or 6602 that there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior." (§ 6602.5, subd. (a).) No distinction is made between a petition to first commit someone and a petition to extend his or her commitment. The question asked is prospective: whether there is reason to believe the person may behave in a manner in the future that necessitates his or her involuntary commitment. That question is equally relevant to a person's need for continued commitment as it is to a person's initial commitment. Thus, just as the state is required to obtain fresh evaluations of the SVP's mental condition to support a petition to extend the commitment, the SVP is entitled to test the basis for those evaluations at a probable cause hearing. (*In re Parker* (1998) 60 Cal.App.4th 1453, 1468 [71 Cal.Rptr.2d 167] [a person whose future liberty is at stake must be permitted a hearing to challenge not only the face of a petition to detain him, but also the factual underpinnings of that petition].)

Finally, we note that the district attorney's proposed interpretation of sections 6604 and 6604.1 is also inconsistent with the provisions of section 6605. That section permits an SVP to petition for conditional release from his or her commitment before the full two-year term expires if his or her mental condition dissipates to the degree that there is no longer a danger to others. Upon receipt of such a petition, the trial court must hold a hearing to determine whether there is probable cause to believe the SVP's condition has changed. The SVP is entitled to be present and to have counsel at that hearing. (§ 6605, subds. (b), (c).) If probable cause exists, another hearing on the issue will be set in which the SVP will enjoy all of the protections that were afforded during the initial commitment proceeding, including the right to demand a jury and to place the burden of proof upon the state. (§ 6605, subd. (c), (d).) We cannot accept the suggestion that an SVP who petitions for early release from his or her two-year commitment term is entitled to a probable cause hearing, but an SVP who completes his or her term of commitment, then is subjected to the state's petition to extend the commitment, is not. In other words, when the amendments to sections 6604 and 6604.1 are viewed in light of the SVP statute as a whole, the district attorney's arguments simply cannot be sustained.

In sum, the provisions of sections 6604 and 6604.1 cannot be read in the manner advocated by the district attorney. They do not constitute a comprehensive scheme for recommitting SVP's that excludes other relevant provisions of the SVP statute. Absent a clear statement from the Legislature that

it intends to deprive SVP's named in a petition to extend a commitment of the right to a probable cause hearing, such hearings must be allowed to go forward according to the provisions of section 6602.

## DISPOSITION

The petition for a writ of mandate is denied. The trial court may proceed with the probable cause hearing previously scheduled. The stay of this matter shall be dissolved upon the opinion becoming final.

Grignon, Acting P. J., and Willhite, J.,* concurred.

Petitioner's petition for review by the Supreme Court was denied September 12, 2001.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.