[No. B168989. Second Dist., Div. Three. Mar. 29, 2004.]

HERNAN OROZCO, Petitioner, v.
SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Hernan Orozco, in pro. per.; and Jean F. Matulis, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, George M. Palmer, Chief Deputy District Attorney, and Phyllis C. Asayama, Deputy District Attorney, for Real Party in Interest.

OPINION

**ALDRICH, J.**—Petitioner Hernan Orozco (Orozco) seeks a writ of mandate directing the trial court to vacate its order denying his motion to dismiss the People's petitions to recommit him pursuant to the Sexually Violent Predator Act (SVP Act or the Act) (Welf. & Inst. Code, § 6600 et seq.) and to enter instead an order granting the motion for dismissal and ordering his release from custody.[1]

The essential issue presented is whether there is a jurisdictional requirement under the Act that a recommitment order be obtained before the expiration of the previous term.

The statutory scheme requires that the recommitment petition be filed before the expiration of the prior term, but there is no requirement that the recommitment order be obtained before the term expires. (*People v. Superior Court (Ramirez)* (1999) 70 Cal.App.4th 1384, 1389–1391 [83 Cal.Rptr.2d 402].) Therefore, we deny Orozco's petition insofar as it seeks dismissal of the recommitment proceedings. However, we direct the issuance of a peremptory writ of mandate directing respondent superior court to set the first recommitment petition for trial forthwith, and to proceed expeditiously with a probable cause hearing on the second recommitment petition.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The initial commitment.*

On May 21, 1996, the People filed a petition for commitment of Orozco as a sexually violent predator pursuant to section 6600 et seq. The petition was

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

found true and on May 14, 1999, Orozco was committed to Atascadero State Hospital for treatment for a period of two years. This initial term of commitment would run through May 13, 2001.

2. *Events during the two-year period ending May 13, 2003, during what would have been the first term of recommitment.*

On April 12, 2001, within the initial term of commitment, the People filed a recommitment petition (the first recommitment petition) (LA Super. Ct. No. ZM004526) to commit Orozco for another two years, through May 13, 2003.

On June 4, 2001, Orozco, with counsel, appeared at a hearing to set the date for a probable cause hearing on the recommitment petition. Orozco's attorney, a deputy public defender, asked the court "to put this over for a probable cause hearing setting date . . . [for] the week of the 16th of July." The trial court then inquired whether there would be a time waiver.[2] Orozco responded that he refused to waive time. The trial court then set the matter for July 16, 2001, anyway, stating: "Notwithstanding that refusal, since there are no time limits applicable to the probable cause hearing, and it's . . . just as [comity] that the inquiry was made."

Then matter then was continued from July 16 to July 24, 2001, at which time Orozco waived his right to a probable cause hearing. The trial court accepted the waiver and found "a strong suspicion that [Orozco] has been convicted of two (2) predicate offenses; and that he has a diagnosed mental disorder that makes him a danger to the health and safety of others; in that it is likely that he would engage in sexually violent behavior if released from the jurisdiction of the Department of Corrections."

Thereafter, the matter was repeatedly continued. It is unclear from the limited record before us who sought the continuances. The People assert that it was the public defender who sought the continuances, in order to obtain experts and prepare a defense. Orozco denies this and points out the minute orders do not indicate which party requested the continuances. It is true the minute orders do not indicate which party sought the continuances. However, the People state they were ready to go to trial on the first recommitment petition at any time—all they needed was the court file on the initial commitment proceeding and the treatment records from Atascadero.

On February 25, 2003, the trial court granted Orozco's motion to represent himself in the matter. At the hearing, the People indicated they would be

---

[2] We note the issue at that juncture was solely whether Orozco would waive time for the probable cause hearing on the recommitment petition.

bringing another recommitment petition. Orozco then stated, "Excuse me, your honor. This other petition cannot be filed next month. It must be filed in May. That's when my two years are up. My second recommitment proceeding."[3]

On March 18, 2003, about two months before expiration of what would have been the first term of recommitment, the People filed the second recommitment petition (LA Super. Ct. No. ZM006055) for the two-year period running through May 13, 2005. On March 27, 2003, Orozco was arraigned on the second recommitment petition.

Meanwhile, the proceedings on the first recommitment petition were still ongoing. On March 20, 2003, the deputy public defender turned over the case file to Orozco, and the trial court granted Orozco's request for a reporter's transcript of certain proceedings of February 25, 2003.

On March 27, 2003, Orozco, now representing himself, filed a request for appointment of an expert witness and an investigator. At that time, the People requested an updated evaluation interview.

On April 3, 2003, Orozco filed a request for indigent funds and supplies. The trial court awarded Orozco funds for supplies and gave him a list of investigators and evaluators from which he could select an appointment.

On April 9, 2003, Orozco requested and obtained orders for shoes, and for appointments of an investigator and an expert witness, as well as an order granting said expert access to him.

On May 12, 2003, one day before the expiration of what would have been the first term of recommitment, Orozco was presented in court, at which time the trial court continued the matter to June 26, 2003, without objection by Orozco.

3. *Events during what would be the second term of recommitment: the two-year period running through May 13, 2005.*

On June 16, 2003, Orozco filed a motion in the trial court to dismiss both recommitment petitions, arguing that because a trial on the first recommitment petition was not held within the two-year period of the first recommitment, the trial court had lost jurisdiction to proceed on the petitions and he was entitled to immediate and unconditional release.

---

[3] Clearly, the parties were aware of the case's chronology.

In response, the People argued that section 6604 requires only that a recommitment petition be filed before the prior commitment term expires, but there is no requirement that a recommitment order be obtained before the expiration of the prior term.

On June 26, 2003, the trial court heard and denied the dismissal motion, ruling "[t]here's nothing right now in the case law that says these petitions can't overlap. There's nothing that says I must dismiss the action."

On August 4, 2003, Orozco filed the instant petition for writ of mandate, seeking to overturn the trial court's order denying his dismissal motion. This court issued an order to show cause and ordered that counsel be appointed for Orozco.

## CONTENTIONS

Orozco contends: a subsequent extended commitment order must be obtained prior to keeping petitioner in custody beyond a two-year commitment period under the SVP Act; jurisdiction does not survive unlawful custody in this case; and, due process requires dismissal.

## DISCUSSION

1.  *The statutory scheme.*

We begin with a general overview of the SVP Act (§ 6600 et seq.), enacted in 1995.

The Legislature stated its purpose in adopting the SVP Act as follows: "The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society. [¶] The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals

and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes." (Stats. 1995, ch. 762, § 1, p. 5913; *id.*, ch. 763, § 1, pp. 5921–5922.)

■ The SVP Act establishes a procedure that may result in the civil commitment of a sexually violent predator, which it defines as a person who has been convicted of a sexually violent offense against two or more victims, and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior. (§ 6600, subd. (a).)

■ Under the SVP Act, the Department of Corrections is authorized to refer "an individual who is in custody under the jurisdiction of the Department of Corrections and who is either serving a determinate prison sentence or whose parole has been revoked" for an initial screening and an evaluation by the state Department of Mental Health to determine whether the person is a sexually violent predator. (§ 6601, subds. (a)(1), (b).) The reference for evaluation is to be made at least six months before the individual's scheduled release date; the evaluation is to be conducted by two specified mental health professionals. (§ 6601, subds. (a), (d).)

■ If both mental health professionals concur that the individual is a sexually violent predator, the Director of Mental Health must forward a request for a petition for commitment to the county in which the prisoner was convicted. (§ 6601, subd. (d).) Upon the filing of the petition, the trial court must hold a probable cause hearing. If the court finds probable cause to believe the person is likely to engage in sexually violent predatory criminal behavior upon his or her release, *it must order a trial* and must order that the person remain in custody in a secure facility until a trial is completed. (§ 6602.) The SVP Act affords the individual a number of procedural safeguards, including the right to trial by jury, the assistance of counsel, and the right to retain experts. (§ 6603.) The standard of proof is beyond a reasonable doubt. (§ 6604.) If trial is by jury, the verdict must be unanimous. (§ 6603, subd. (f).)

■ A person determined at trial to be a sexually violent predator must be committed to the custody of the state Department of Mental Health for appropriate treatment and confinement in a secure facility for two years, *and is subject to extended commitments incident to the filing of new petitions.* The SVP Act also includes provisions for an annual review of the individual's mental condition, conditional release, and discharge upon a determination at a hearing of a change in that condition. (§§ 6604, 6605.)

2. *Recommitment procedures under the Act; no jurisdictional requirement that a recommitment order be obtained before expiration of the prior term.*

"The procedure for extending an SVP's commitment has not been widely considered by the courts." (*Cooley v. Superior Court* (2001) 89 Cal.App.4th 785, 787 [107 Cal.Rptr.2d 724].) However, *People v. Superior Court (Ramirez), supra,* 70 Cal.App.4th 1384, speaks to the issue herein. In *Ramirez,* the trial court dismissed a recommitment petition on the ground it lacked jurisdiction because the trial on the recommitment petition would not be completed before the expiration of the original commitment term. (*Id.,* at pp. 1386–1387.) The reviewing court issued a peremptory writ directing the trial court to vacate its order dismissing the recommitment petition and to proceed with a trial on the petition. (*Id.,* at p. 1391.)

*Ramirez* explained the SVP Act does not specify "a time by which the trial must be commenced or concluded. Indeed, the only reference to time limits appears to envision that trials might end after expiration of the initial commitment. Section 6604.1 provides: '(a) The two-year term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. The two-year term shall not be reduced by any time spent in a secure facility prior to the order of commitment. *For subsequent extended commitments, the term of commitment shall be from the date of the termination of the previous commitment . . . .'* (Italics added.) The italicized statement implicitly recognizes that the extended commitment trial may not finish before expiration of the previous commitment. Otherwise, there would be no need to specify that the term of the extended commitment shall run from the date the previous commitment ended. *Accordingly, we reject [the] claim that section 6604 must be read as requiring that a subsequent commitment order be obtained before expiration of the previous term.*" (*People v. Superior Court (Ramirez), supra,* 70 Cal.App.4th at pp. 1389–1390, second italics added.)[4]

*Ramirez* further observed that since the SVP Act was enacted after the Mentally Disordered Offender Act (Pen. Code, § 2960 et seq.) and the not guilty by reason of insanity provisions (Pen. Code, § 1026 et seq.), "the Legislature presumably was aware of the time limits in those provisions. If it had wanted to include similar time limits in the [SVP Act], it would have done so. *Its failure to do so persuades us that the Legislature did not intend to have any greater time limit than the requirement that the person be in*

---

[4] Section 6604.1 subsequently was amended, but the changes to subdivision (a) thereof were not substantive. (Stats. 2000, ch. 420, § 4.)

*custody and the petition be filed before expiration of the current commitment term.* [Citation.]" (*People v. Superior Court (Ramirez), supra,* 70 Cal.App.4th at p. 1391, italics added.)

Here, Orozco was in custody and both recommitment *petitions* were filed before the expiration of the respective underlying terms. The statutory scheme does not require that the recommitment *order* be obtained before the expiration of the underlying term.[5]

■ The issue thereafter is simply whether the delay in trial violated Orozco's right to due process. The record reflects the delay in bringing the matter to trial was attributable to Orozco's counsel and/or to Orozco himself. Orozco has never announced that he is ready for trial. After repeated delays with respect to the first recommitment petition stemming from Orozco's lack of preparedness for trial, Orozco waited until June 16, 2003, shortly after the expiration of what would have been the first recommitment term, to file a dismissal motion on the ground the delay had deprived the trial court of jurisdiction to proceed. The motion was meritless because, as explained, the SVP Act does not specify the time within which the recommitment trial must occur. Obviously, trial on a recommitment petition should occur within a reasonable time after the probable cause hearing. (§ 6602.) Surely the Legislature did not contemplate the lengthy delay that occurred here. The trial court should not have acquiesced in the leisurely manner in which this matter was approached by the parties. Section 6602 provides that once probable cause has been determined, the trial court "shall order that a trial be conducted." It follows the trial court should ensure the matter proceeds to trial within a reasonable time following the probable cause hearing. Nonetheless, the delay herein did not deprive the trial court of jurisdiction to proceed on either petition. The remedy for the delay is not dismissal but rather, an order directing that the matter proceed to trial forthwith.

Moreover, Orozco, by his conduct, waived the issue of delay in bringing the matter to trial. The record reflects that in May 2003, at the expiration of the two-year period that would have constituted the first recommitment term, Orozco was still preparing his defense to the first recommitment

---

[5] *People v. Williams* (1999) 77 Cal.App.4th 436 [92 Cal.Rptr.2d 1], which held the trial court did not lose jurisdiction to conduct a commitment trial pursuant to the Mentally Disordered Prisoners Act (MDPA) (Pen. Code, § 2960 et seq.), observed "if the release date were jurisdictional, an MDO [mentally disordered offender] might try to slow down or delay the progress of a trial until his release date. Then, if it became apparent that trial could not be completed by the deadline, the court would have to grant a motion to dismiss the petition, terminate the proceedings, and direct the MDO's release, regardless of the circumstances that prevented completion before the deadline and, more importantly, regardless of whether the MDO poses a danger to others and needs further treatment." (*People v. Williams, supra,* at p. 453.) Those considerations are equally applicable in the present context.

petition. It was only in the final week of July 2003 that Orozco was evaluated by his own expert, Dr. Anderson. Prior to moving for dismissal on June 16, 2003, the only time Orozco raised the issue of timeliness was back on June 4, 2001, when Orozco stated he refused to waive the time for a hearing to set the probable cause hearing on the first recommitment petition. The trial court properly overruled that objection on the ground the statutory scheme does not specify the time frame within which the probable cause hearing must be held.

■ In sum, the People's failure to obtain a recommitment order within the two-year period ending May 13, 2003, did not deprive the trial court of jurisdiction to entertain the two recommitment petitions. The trial court correctly denied Orozco's dismissal motion.[6]

3. *Orozco must remain in custody pending trial.*

Alternatively, Orozco asks that he be released from custody pending a trial on the petitions. The argument is meritless. Section 6602 requires that upon a finding of probable cause, "the judge shall order that the person remain in custody in a secure facility until a trial is completed." Here, the trial court made a finding of probable cause on the first recommitment petition. Pending trial on the petition, Orozco must remain in custody. His remedy is to proceed to trial forthwith.

### DISPOSITION

The order to show cause is discharged. The petition, insofar as it seeks dismissal of the proceedings, is denied. Let a peremptory writ of mandate issue directing respondent court to set the first recommitment petition for trial forthwith, and to proceed expeditiously with a probable cause hearing on the second recommitment petition.

Croskey, J., concurred.

**KLEIN, P. J.,** Concurring.—I concur in the majority opinion in that Orozco, by his conduct, waived the issue of delay in bringing the matter to trial. However, I write separately to set forth my concerns with respect to the statutory scheme as it relates to *recommitment* petitions.

Welfare and Institutions Code section 6602 provides "[i]f the judge determines that there is probable cause, the judge . . . *shall order* that a trial be

---

[6] This fact situation is not unique. In *Cheek v. Superior Court* (2002) 103 Cal.App.4th 520 [126 Cal.Rptr.2d 820], there were two pending petitions to extend the defendant's commitment, and the petitions were consolidated for trial. (*Id.*, at p. 523.) The issue in *Cheek* was which county had jurisdiction over the proceedings.

conducted." (Italics added.)[1] Unfortunately, the Sexually Violent Predator Act (SVP Act or the Act) (§ 6600 et seq.) does not specify a time frame either for conducting the probable cause hearing on a recommitment petition *or* for the trial on the recommitment petition. (*People v. Superior Court (Ramirez)* (1999) 70 Cal.App.4th 1384, 1389 [83 Cal.Rptr.2d 402].) Further, the "procedure for extending an SVP's commitment has not been widely considered by the courts." (*Cooley v. Superior Court* (2001) 89 Cal.App.4th 785, 787 [107 Cal.Rptr.2d 724].)

However, certain principles are self-evident. It is *the People*, as the party bringing the recommitment petition, who have the burden to move the case forward. The trial court, in turn, upon determining "that there is probable cause, . . . *shall order* that a trial be conducted." (§ 6602, italics added.)

Here, neither the People, nor the trial court, nor Orozco, acted with alacrity. As a consequence, all that has happened on the two recommitment petitions is that Orozco has had a probable cause hearing on the first recommitment petition. Neither of the two recommitment petitions has been tried, and there has not been even a probable cause hearing on the second recommitment petition. Thus, we are presented with the peculiar situation of Orozco's remaining in custody after having completed the two-year term of his initial commitment due to the pendency of the two recommitment petitions.

What would have been the first two-year term of recommitment expired on May 13, 2003. Meanwhile, Orozco remains in custody pursuant to a finding of probable cause on the first recommitment petition, awaiting trial on said petition, even though he already has completed what would have been the entire two-year term of that recommitment.

Consequently, the trial court will be in the surreal position of conducting a trial on the first recommitment petition after the expiration of what would have been that term of recommitment. What if the jury ultimately determines at the trial on the first recommitment petition that Orozco was not a sexually violent predator? By that time, said recommitment term already would have expired.

To prevent these peculiar circumstances from recurring, these aspects of the statutory scheme need clarification to impose timetables for conducting the probable cause hearing on a recommitment petition and for the subsequent recommitment trial.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

To reiterate, the People as well as the trial court have their respective responsibilities herein. It is the People's burden to prosecute their recommitment petition diligently, and it is the duty of the trial court, upon a finding of probable cause, to order a trial on the recommitment petition. The People and the trial court should not acquiesce in indefinite delay of the proceedings. Irrespective of a defendant's reluctance to proceed to trial on a recommitment petition, the People and the trial court have an obligation to ensure that there is a timely determination of probable cause on a recommitment petition, followed by a timely trial thereon.

A petition for a rehearing was denied April 28, 2004, and petitioner's petition for review by the Supreme Court was denied June 30, 2004. Kennard, J., was of the opinion that the petition should be granted.