[No. A109299. First Dist., Div. One. Feb. 28, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
DEXTER HAYES, Defendant and Appellant.

COUNSEL

Julia J. Spikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Moona Nandi and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MARCHIANO, P. J.**—This is an appeal from an order, following a jury verdict, recommitting defendant Dexter Hayes as a sexually violent predator (SVP). It arises out of the procedural entanglement of conducting a probable cause hearing simultaneously with trial.

In the fall of 2000, a jury found defendant to be an SVP within the meaning of Welfare and Institutions Code section 6600.[1] As a result, the trial court civilly committed him to a treatment facility of the Department of Mental Health for two years. (§§ 6600, 6604.) We affirmed the SVP commitment in a prior proceeding. (*People v. Hayes* (Mar. 26, 2002, A093285) [nonpub. opn.].)

As we shall explain further, *post*, the People petitioned to recommit defendant as an SVP. This required a pretrial probable cause hearing on the recommitment petition. Instead of conducting a probable cause hearing within a reasonable time of the filing of the petition to recommit, the trial court conducted the hearing *at the conclusion of, instead of before and as a prerequisite to*, the trial on that petition. The deviation from statutory requirements amounts to procedural error which affected defendant's due process. But on the facts of this case, we must conclude the error is not prejudicial under the rationale of *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529–530 [165 Cal.Rptr. 851, 612 P.2d 941] (*Pompa-Ortiz*). Defendant was not prejudiced by the absence of a pretrial probable cause determination in light of the evidence and the trial jury's verdict based on a standard of beyond a reasonable doubt.

## I. THE SVP LAW

The Sexually Violent Predators Act (SVPA) (§ 6600 et seq.) provides for a two-year civil commitment at the end of a defendant's prison term if the defendant is found to be an SVP. (§§ 6600, 6601, 6604; see *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 235, 243 [127 Cal.Rptr.2d 177, 57 P.3d 654] (*Cooley*).) In general, an SVP determination requires findings that (1) the defendant has been convicted of sexually violent offenses against two or more victims and (2) suffers from a diagnosed mental disorder making him likely to engage in sexually violent criminal behavior, and thus a danger to the health and safety of others. (§ 6600, subd. (a)(1).) A civil commitment can only be imposed if, after a trial, a judge or a unanimous jury finds beyond a reasonable doubt that a defendant is an SVP. (§§ 6603, 6604; see *Cooley, supra*, at p. 243.)

But an SVP trial is "the last stage of a complex administrative and judicial process . . . ." (*Cooley, supra*, 29 Cal.4th at p. 244.) Indeed, "[t]he process

---

[1] Subsequent statutory citations are to the Welfare and Institutions Code.

necessary for initially declaring a prisoner an SVP is an involved and demanding one." (*People v. Munoz* (2005) 129 Cal.App.4th 421, 429 [28 Cal.Rptr.3d 295] (*Munoz*).)

### Administrative Proceedings

■ First, the Department of Corrections screens the defendant at least six months before his release date for the likelihood of his being an SVP. If the Department of Corrections makes a determination of likelihood, the defendant is referred to the Department of Mental Health for a full evaluation of whether the defendant is an SVP as defined by section 6600. (§ 6601, subds. (a), (b); see *Cooley, supra,* 29 Cal.4th at p. 244.)

The Department of Mental Health then has the defendant evaluated by two mental health professionals. (§ 6601, subds. (c), (d); see *Cooley, supra,* 29 Cal.4th at p. 244; *Munoz, supra,* 129 Cal.App.4th at p. 429.) If—and only if—the two mental health professionals agree that the defendant "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the Director of Mental Health (Director) forwards a request for a petition for civil commitment to the county in which the defendant was convicted. (§ 6601, subd. (d); see *Cooley, supra,* 29 Cal.4th at p. 244.)

The designated counsel in that county—typically the district attorney or county counsel—then reviews the Director's request. If the designated counsel concurs, counsel will file a petition for civil commitment under section 6601, thereby initiating the judicial component of SVP proceedings. (§ 6601, subds. (d), (i); see *Cooley, supra,* 29 Cal.4th at p. 244; *Munoz, supra,* 129 Cal.App.4th at p. 429.)

### Judicial Proceedings

■ The first stage of SVP judicial proceedings is a facial review of the petition. Once the petition is filed, a superior court judge must "review the petition and determine whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that [the defendant] is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the judge makes that determination from this facial review, the judge orders the defendant detained in a secure facility pending a

probable cause hearing under section 6602. The probable cause hearing is mandatory (§ 6602, subd. (a)) and must begin within 10 calendar days from the detention order. (§ 6601.5; see *Cooley, supra,* 29 Cal.4th at pp. 244–245.)

"The probable cause hearing shall not be continued except upon a showing of good cause by the party requesting the continuance." (§ 6602, subd. (b).) But as we see from this case, a defendant can waive the right to have the probable cause hearing begin within 10 days of the section 6601.5 detention order. And there is no statutory outside time limit within which a probable cause hearing must be held after the filing of the petition: "Unfortunately, the [SVPA] does not specify a time frame . . . for conducting the probable cause hearing . . . . [Citation.]." (*Orozco v. Superior Court* (2004) 117 Cal.App.4th 170, 181 [11 Cal.Rptr.3d 573] (conc. opn. of Klein, P. J.) (*Orozco*).)

 The conceptual nature of the probable cause hearing has evolved. It is now clear the probable cause hearing is "a full, adversarial preliminary hearing . . . ." (*Munoz, supra,* 129 Cal.App.4th at p. 429.) The defendant has the right to the assistance of counsel. (§ 6602, subd. (a).) The hearing "allow[s] the admission of both oral and written evidence" on the issue of probable cause. (*In re Parker* (1998) 60 Cal.App.4th 1453, 1469 [71 Cal.Rptr.2d 167] (*Parker*); see *Cooley, supra,* 29 Cal.4th at p. 245, fn. 8.) Despite their hearsay nature, the reports of the mental health professionals may be admitted—but the defendant may challenge the reports by calling the professionals to the stand and cross-examining them. (*Cooley, supra,* 29 Cal.4th at p. 245, fn. 8; *Parker, supra,* 60 Cal.App.4th at pp. 1469–1470.) "[The defendant] should have the ability to call such other witness[es] who, upon a proper showing, the superior court judge finds to have relevant evidence to give bearing on the issue of probable cause." (*Parker, supra,* at p. 1470.)[2]

 *Cooley* makes clear that the scope of the probable cause hearing is the same as the scope of the trial. That is, the judge conducting the probable cause hearing must review *all* necessary elements of an SVP determination and conclude there is probable cause as to each element. (*Cooley, supra,* 29 Cal.4th at pp. 246–247.) "For this reason, based on the structure of the SVPA, a [probable cause] hearing is analogous to a preliminary hearing in a criminal case; both serve to ' " 'weed out groundless or unsupported charges . . . and to relieve the accused of the degradation and expense of a . . . trial.' " ' (*Nienhouse v. Superior Court* (1996) 42 Cal.App.4th 83, 91 [49 Cal.Rptr.2d 573] [citation].) *Like a criminal preliminary hearing, the only purpose of the probable cause hearing is to test the sufficiency of the evidence supporting the SVPA petition.* [Citation.]" (*Cooley, supra,* 29 Cal.4th at p. 247, italics added.)

---

[2] A more extensive discussion of the probable cause hearing is found at *Cooley, supra,* 29 Cal.4th at pages 246–256.

If the trial court determines there is probable cause, the SVP petition proceeds to trial. (*Cooley, supra,* 29 Cal.4th at p. 245.) Either party may demand a jury trial. The defendant has the right to the assistance of counsel, to retain experts, and to access to relevant psychological and medical reports. He can only be found to be an SVP by a standard of beyond a reasonable doubt, and any jury verdict must be unanimous. (§§ 6603, subds. (a), (b), (e), (f), 6604; see *Munoz, supra,* 129 Cal.App.4th at p. 429.)

■ An SVP commitment may be extended by a process known as recommitment. Following the original SVP commitment of two years, a defendant may be recommitted for one or more additional terms of two years each. (§§ 6604, 6604.1, subd. (a); see *Cooley, supra,* 29 Cal.4th at p. 243, fn. 5.) But "[the] same demanding procedures" we have outlined *ante,* "including new evaluations, preliminary [i.e., facial] review by the trial court, preliminary hearing and trial, must be complied [with in] extending an SVP commitment. [Citations.]" (*Munoz, supra,* 129 Cal.App.4th at p. 429.)

"This requirement for what is essentially a new determination of SVP status every two years arises from the logical and constitutional requirement that any SVP commitment be based on a *currently* diagnosed mental disorder which makes it likely the [defendant] will engage in sexually violent criminal behavior. *This requirement of currency requires evaluations done near the time of the recommitment and a new determination by a trier of fact that the defendant is an SVP.* [Citations.]" (*Munoz, supra,* 129 Cal.App.4th at p. 430, italics added.)

## II. PROCEDURAL BACKGROUND AND FACTS

This case actually involves two successive petitions to recommit. As defendant's original commitment was about to expire, the People filed their first petition to recommit defendant for another two years. Due to numerous delays, that first petition had not yet proceeded to trial on the eve of the two-year recommitment period. The People filed a second petition to recommit defendant for an additional two-year period. The trial court consolidated the two recommitment petitions and conducted a trial thereon. Unfortunately, the trial court conducted a probable cause hearing on the second recommitment petition *at the conclusion of, instead of before and as a prerequisite to,* trial on the second petition.

Defendant was originally committed on November 16, 2000. The two-year commitment was to expire November 16, 2002.

On September 25, 2002, the District Attorney of Alameda County filed a petition for recommitment for another two years, until November 16, 2004.

This petition, which we call "Petition 1," was supported by the clinical reports of two psychologists, Christopher North, Ph.D., and Charles Jackson, Ph.D., both of whom were of the opinion that defendant continued to be an SVP.

On November 15, 2002—the day before the expiration of the original two-year commitment—the trial court held a probable cause hearing on Petition 1. The court found probable cause to believe that defendant continued to be an SVP, and ordered the matter on calendar for March 14, 2003, to be set for trial.

On March 14, 2003, the court set a jury trial on Petition 1 for January 5, 2004. On November 21, 2003, the court vacated that trial date and reset trial for January 12, 2004. The trial date was continued to January 15, January 20, January 22, and January 26, 2004.

On January 26, trial was continued to March 8, 2004. The trial date was again continued to March 22, March 24, and March 26, 2004. On March 26, trial was continued pursuant to stipulation of the parties to April 9, 2004.

On April 9, 2004, trial on Petition 1 was continued to August 6, 2004—a little over three months before the two-year recommitment period *sought* by Petition 1 was due to *expire*.

On May 28, 2004, no doubt due to the proximity of the expiration date, the District Attorney of Alameda County filed a second petition for recommitment. This second petition, which we call "Petition 2," sought an additional two-year recommitment from November 16, 2004 to November 16, 2006. Petition 2 was supported by clinical reports from Drs. North and Jackson that defendant continued to be an SVP.[3]

No probable cause hearing was held on Petition 2 while Petition 1 proceeded on its slow pace toward trial. Apparently, defendant had waived the provision of section 6601.5 requiring that the probable cause hearing be held within 10 days of the detention order following facial review. On August 6, 2004, trial on Petition 1 was again continued, this time to September 27, 2004.

On September 21, 2004, defendant filed a motion to continue trial based on the unavailability of his expert witness, Dr. Glover. On September 27, the court continued trial to October 12, 2004.

On September 28, 2004, the People filed a motion to continue trial based on the unavailability of one of their witnesses, Dr. North. On October 8, the

---

[3] Petition 2 was apparently refiled September 29, 2004.

trial court vacated the October 12 trial date and set trial for November 1, 2004—literally 15 days before the two-year recommitment period sought by Petition 1 was due to expire.

On October 29, 2004, the People filed a motion to consolidate Petition 1 and Petition 2 for trial. The People argued that consolidation was proper because the issues raised by the two petitions were identical.

In their motion, the People noted that defendant had waived his right to a speedy probable cause hearing on Petition 2—i.e., a hearing within 10 days of the section 6601.5 detention order. The People further noted that "the probable cause hearing in that matter is still pending"—i.e., no such hearing had yet been held. The People "request[ed] the Court hold the probable cause hearing on [Petition 2] either as a motion in limine in advance of trial or concurrent with the trial. In the event the latter course is adopted, the [People] will ask the Court to determine the existence of probable cause *at the conclusion of the presentation of evidence*." (Italics added.)

On the trial date of November 1, the court continued the matter to November 2 for the hearing of various motions, including the motion to consolidate. The trial court wondered why Petition 1 had not yet gone to trial, asking "Why was it put over so long?" Both counsel indicated they did not have sufficient staff to promptly bring SVP cases to trial. The deputy district attorney said the delay in defendant's case was "emblematic of a problem that's going to become or is fairly widespread." Defense counsel stated, "We run at least a year, a year-and-a-half into the [two-year] commitments before anybody actually has a trial." Defense counsel, an assistant public defender, also claimed the state was supposed to reimburse the public defender's office for its work on SVP cases, but had failed to do so.

Defense counsel opposed the motion to consolidate on the ground that the two petitions dealt with two different periods of time, thus making the issues different. After considerable discussion, the trial court granted the motion to consolidate Petition 1 and Petition 2 for trial, for the purposes of "efficiency" and "judicial economy" because the issues and witnesses in both trials were the same. The court decided to "hear the probable cause on [Petition 2] . . . concurrent with the trial."

On November 4, 2004, defense counsel placed on the record, with the court's apparent permission, an objection to holding the probable cause hearing on Petition 2 during trial. The trial court overruled the objection: "That's the only logical, reasonable way I can figure out to do this."

Jury trial on the consolidated petitions began November 4 and continued over a period of several days, culminating on December 7, 2004. We note the

two-year SVP commitment sought on Petition 1 *expired* November 16, 2004—during, and about three weeks before, the end of trial.

On the last day of trial, December 7, the trial court conducted the probable cause hearing while the jury was deliberating on the petitions. The court conducted the hearing in open court, with only counsel and defendant present. At 3:30 p.m., the court found probable cause on Petition 2. At 3:34 p.m., the jury returned to court with its verdict, finding beyond a reasonable doubt that defendant was an SVP.

On December 7, 2004, the court recommitted defendant to a two-year term from November 16, 2004 to November 16, 2006. Two days later the court imposed a four-year recommitment term, from November 16, 2002 to November 16, 2006.

## III. DISCUSSION

It is undisputed that defendant has been convicted of two prior sexually violent offenses, known as "predicate offenses" in the context of SVP proceedings: forcible oral copulation and rape. The facts underlying defendant's predicate offenses are set forth in detail in our prior opinion, and need not be set forth in this opinion. (*People v. Hayes, supra,* A093285.) Neither do we need to summarize the evidence presented at defendant's trial on the consolidated SVP petitions.

The issue here is procedural. Did the trial court err by conducting the probable cause hearing on Petition 2 concurrently with—actually, at the end of—the trial? If so, does the error require reversal?

The answer to the first question is yes. Clearly, the structure of the SVPA makes the probable cause hearing a necessary *prerequisite*, not an *accompaniment*, or *afterthought*, of trial. The probable cause hearing serves the function of a preliminary hearing in a criminal case—to test the evidence for sufficient probable cause to believe the facts which must be ultimately proven beyond a reasonable doubt at trial, and by doing so to weed out groundless or unsupported charges. The Supreme Court made this clear in *Cooley*, in the passage quoted *ante* which refers to *Nienhouse*. Following the passage from *Nienhouse* quoted by the Supreme Court, there was this passage: " ' ". . . Many an unjustifiable prosecution is stopped at that point [i.e., the time of the preliminary hearing] where the lack of probable cause is clearly disclosed." ' [Citations.]" (*Nienhouse v. Superior Court, supra,* 42 Cal.App.4th at p. 91.)

It would be strange indeed for preliminary hearings to exercise that function simultaneously with trial—or, as here, during jury deliberations.

Likewise, procedural common sense dictates that the probable cause hearing take place before, and one would think *substantially* before, an SVP trial.

■ A number of other passages from *Cooley* make it clear that a probable cause hearing is a necessary prerequisite to an SVP trial. At the conclusion of its description of the probable cause hearing, the *Cooley* court stated: "*Only if the superior court finds that there is probable cause, therefore, does the civil commitment process proceed beyond this initial judicial proceeding to trial.*" (*Cooley, supra,* 29 Cal.4th at p. 245, italics added.) The court subsequently stated, "The outcome of the probable cause hearing determines whether or not an offender must proceed to a trial in which he or she might be civilly committed as a sexually violent predator. [Citation.]" (*Id.* at p. 246.) The court also interpreted the text of section 6602, subdivision (a) as "stat[ing] that the civil commitment *can only proceed to the trial stage* if there is 'probable cause.' [Citation.]" (*Cooley, supra,* at p. 251, italics added.)

Furthermore, a prospective SVP may be placed in a state mental hospital for treatment pending trial on the SVP petition—but he may only be so placed if there has been a probable cause finding. (§ 6602.5, subd. (a); see *People v. Ciancio* (2003) 109 Cal.App.4th 175, 196–197 [134 Cal.Rptr.2d 531].)[4]

■ Moreover, the text of section 6602, subdivision (a) renders the probable cause hearing mandatory: "A judge of the superior court *shall* review the petition and *shall* determine whether there is probable cause . . . ." (Italics added.) As such, a probable cause hearing is a mandatory procedural safeguard. (See *People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1230 [106 Cal.Rptr.2d 490]; *Garcetti v. Superior Court* (1998) 68 Cal.App.4th 1105, 1112 [80 Cal.Rptr.2d 724].) Deprivation of a proper, adversarial probable cause hearing is a denial of procedural due process. (*Parker, supra,* 60 Cal.App.4th at pp. 1462–1463, 1469–1470; see *People v. Otto* (2001) 26 Cal.4th 200, 210 [109 Cal.Rptr.2d 327, 26 P.3d 1061].) A probable cause hearing is a crucial part of the panoply of procedural safeguards in the SVPA. It must be conducted at the early stages of the judicial proceedings on an SVP petition.

We understand the difficulties in bringing SVP petitions to trial. Indications of widespread trial delays are in the record before us, and are discussed in *Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1170–1172 [21 Cal.Rptr.3d 21] (*Litmon*). That court observed that these delays are enabled by

---

[4] Section 6602.5, subdivision (a) states: "No person may be placed in a state hospital pursuant to the [SVPA] until there has been a determination pursuant to Section . . . 6602 that there is probable cause to believe that the [defendant] is likely to engage in sexually violent predatory criminal behavior."

the overall lack of time limits in the SVPA. (*Litmon, supra,* at p. 1170 & fn. 5.) We call upon the Legislature to revisit the SVPA and impose a bottom-line, nonwaivable time limit on conducting the probable cause hearing after filing the SVP petition.[5]

 For now, we express our agreement with Presiding Justice Klein: "It is *the People*, as the party bringing the recommitment petition, who have the burden to move the case forward." (*Orozco, supra,* 117 Cal.App.4th at p. 181 (conc. opn. of Klein, P. J.).) "The People and the trial court should not acquiesce in indefinite delay of the proceedings. . . . [T]he People and the trial court have an obligation to ensure that there is a timely determination of probable cause on a recommitment petition, followed by a timely trial thereon." (*Id.* at p. 182.)

The trial court erred by conducting the probable cause hearing on Petition 2 concurrently with trial. To properly fulfill its function of testing the evidence and screening out unsupportable cases, the probable cause hearing can only be meaningful if it is held a reasonable time from the filing of the petition, and in no case on the eve of, or concurrently with, trial.[6]

It remains to determine whether the error is prejudicial. We must conclude that it is not, under the rule of *Pompa-Ortiz.* This rule governs the determination of how and when error at a criminal preliminary hearing can result in reversal after trial and conviction. The rule is pertinent here because the SVP probable cause hearing is directly analogous to a criminal preliminary hearing.

In *Pompa-Ortiz* the California Supreme Court replaced a rule of reversal per se with a more pragmatic standard based on actual prejudice. Under prior law, if a criminal defendant had not been legally committed by the magistrate at the preliminary hearing, the court was considered to lack jurisdiction to try and convict the defendant. As such, a defect in a probable cause proceeding

---

[5] We are aware defendant waived his right to have his probable cause hearing within 10 days per section 6601.5. But such a waiver does not amount to an open-ended waiver of the right to have the hearing before trial.

[6] We note that we have framed the procedural issue more directly than defendant. While he objects to the timing of the probable cause hearing, his opening brief also appears to argue the consolidation itself was error. As we read the brief, defendant essentially attacks consolidation because it resulted in a probable cause hearing concurrent with trial. Thus the timing of the probable cause hearing is the real issue in this case. In any case, the consolidation itself, without regard to the timing of the probable cause hearing, was not legally improper. A court may consolidate trial on SVP petitions if consolidation does not delay trial on the earlier petition and does not prejudice the right to a fair trial. (*Litmon, supra,* 123 Cal.App.4th at pp. 1173–1177.) Here there was no prejudice from consolidation and the consolidation facilitated, rather than delayed, trial on Petition 1.

required reversal per se even when a defendant subsequently was found guilty beyond a reasonable doubt. (*Pompa-Ortiz, supra,* 27 Cal.3d at pp. 527–529 [describing and overruling the rule of *People v. Elliot* (1960) 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d 225]].)

*Pompa-Ortiz* held that the reversal per se rule relied on an overbroad definition of jurisdiction—the definition used in the context of the writ of prohibition. That is, if a defendant was not legally committed by a magistrate, the defendant could petition for a writ of prohibition to restrain trial on the theoretical basis that the court lacked jurisdiction to proceed. (*Pompa-Ortiz, supra,* 27 Cal.3d at p. 528.) The reversal per se rule of *Elliot* grew out of the concept that the court lacked jurisdiction to proceed to trial. (*Id.* at p. 527.)

But the *Pompa-Ortiz* court observed that in the context of prohibition, "jurisdiction has a much broader meaning than does *jurisdiction in the fundamental sense of legal power to hear and determine a cause.*" (*Pompa-Ortiz, supra,* 27 Cal.3d at p. 529, italics added.) Under the narrower definition of jurisdiction, per se reversal of a conviction for a defect in a preliminary hearing is not necessary: "The presence of a jurisdictional defect which would entitle a defendant to a writ of prohibition prior to trial does not necessarily deprive a trial court of the legal power to try the case if prohibition is not sought. [Citation.]" (*Ibid.*)

*Pompa-Ortiz* rejected the reversal per se rule and subjected the vast majority of preliminary hearing defects to a rule of harmless error when raised on appeal. "Henceforth irregularities in the preliminary examination procedures *which are not jurisdictional in the fundamental sense* shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if [the] defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects." (*Pompa-Ortiz, supra,* 27 Cal.3d at p. 529, italics added.)

In other words, a defendant who feels he has suffered error at his preliminary hearing can seek to correct that error by filing a pretrial writ petition. If he does not, and elects to go to trial, the error at the preliminary hearing can only lead to reversal of the conviction if the error created actual prejudice.

The rule of *Pompa-Ortiz* applies to denial of substantial rights as well as to technical irregularities. *Pompa-Ortiz* itself observed that denial of counsel at

the preliminary hearing would be subject to a harmless error rule on appeal from the conviction. (*Pompa-Ortiz, supra,* 27 Cal.3d at p. 530.) Subsequent cases apply the rule to deprivation of the fundamental right to counsel at the preliminary hearing, requiring a showing of prejudice for reversal on appeal. (See, e.g., *People v. Millwee* (1998) 18 Cal.4th 96, 121–122 [74 Cal.Rptr.2d 418, 954 P.2d 990] [claim of ineffective counsel at preliminary hearing; no prejudice because ineffectiveness did not result in lost evidence or affect trial counsel's ability to defend]; *People v. Coleman* (1988) 46 Cal.3d 749, 772–773 [251 Cal.Rptr. 83, 759 P.2d 1260] [same].)[7]

*Pompa-Ortiz* applies to SVP proceedings. (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1190 [124 Cal.Rptr.2d 186, 52 P.3d 116]; *People v. Talhelm* (2000) 85 Cal.App.4th 400, 405 [102 Cal.Rptr.2d 150]; *People v. Butler* (1998) 68 Cal.App.4th 421, 435 [80 Cal.Rptr.2d 357] (*Butler*).)[8] The *Butler* case is instructive. The trial judge in that case did not conduct a full-scale, evidentiary probable cause hearing but "simply conduct[ed] a facial review of the commitment petition at the probable cause hearing." That court applied the rule of *Pompa-Ortiz* and noted that the defendant had failed to seek pretrial review and a writ ordering an evidentiary hearing. The court then noted that defendant had the opportunity to call and cross-examine witnesses at the trial on the SVP petition—and thus was not prejudiced by the lack of an evidentiary probable cause hearing. (*Butler, supra,* at p. 435.)

The same logic applies here. Defendant did not have a probable cause hearing until after the evidentiary phase of trial had concluded and jury deliberations had begun. Thus, he had no pretrial probable cause hearing at all. But like the defendant who has an improper, nonevidentiary hearing—or a criminal defendant who has a preliminary hearing without counsel, in effect no hearing at all—defendant received a full-blown trial and had a jury conclude, beyond a reasonable doubt, that he was an SVP within the meaning of section 6600, subdivision (a)(1). Defendant was found to be an SVP based in part on some of the same evidence that was presented at his judge-reviewed probable cause hearing that has a lesser standard of proof. Defendant has not presented any persuasive argument to demonstrate that he has been prejudiced in any way by the irregular proceedings. We see no prejudice from the trial court's failure to hold a hearing at the outset to determine whether there was probable cause.

We also agree with the People that, because the first recommitment term had all but expired by the time of trial, the issues regarding both Petition 1

---

[7] Denial of a "fundamental" right at the preliminary hearing must be distinguished from an error in the proceedings that deprived the court of jurisdiction in the "fundamental" sense of the legal power to proceed.

[8] At our request, the parties have filed supplemental letter briefs on the impact of these cases on our disposition here.

and Petition 2—which focused on the recommitment term about to begin—were essentially the same. And the experts were the same. Defendant only offers speculation as to how he might have suffered prejudice by supposedly not being able to evaluate the People's case on Petition 2. We note the experts' reports regarding Petition 2 were attached as exhibits to the petition—which was filed with the court May 28, 2004, well in advance of the trial on the petitions. Defendant's counsel had ample time to prepare for and contest the expert evidence that was the heart of this case.

Defendant argues we should reverse because of two instances of claimed prosecutorial misconduct during closing argument: the mention of defendant's failure to take a polygraph test and the suggestion that the jury should rely on the original commitment finding by the previous jury. Neither instance of alleged misconduct has been preserved for appellate review. In neither case did defendant properly object to the alleged misconduct *and* request an admonition to the jury. (See *People v. Hill* (1998) 17 Cal.4th 800, 820–821 [72 Cal.Rptr.2d 656, 952 P.2d 673].) Defendant did not specifically object to the mention of the failure to take a polygraph, but only to the prosecutor arguing a number of matters which were not in evidence; and defendant did not request an admonition. Defendant did object to the mention of the prior jury and the objection was sustained; but defendant did not request an admonition. In light of the evidence presented by the experts and the other evidence reviewed by the jury, we are convinced any error would be harmless and defendant was not denied a fair trial.

## IV. CONCLUSION

We stress that the trial court's procedure was improper—and, we emphasize, not to be repeated. But we conclude that defendant's recommitment as an SVP must be affirmed.

## V. DISPOSITION

We dispose of this matter as follows. Any issue regarding Petition 1 is moot, because the two-year term that could have been imposed on that petition has now expired. (Cf. *People v. Cheek* (2001) 25 Cal.4th 894, 897–898, 903 [108 Cal.Rptr.2d 181, 24 P.3d 1204] [SVP appeal moot where commitment term expired during pendency of appeal].) We affirm the recommitment on Petition 2 because of an absence of prejudicial error in the

proceedings below. We modify the trial court's recommitment order to reflect a two-year recommitment term from November 16, 2004, to November 16, 2006. As modified, the recommitment order is affirmed.

The SVP determination and resulting SVP recommitment are affirmed.

Stein, J., and Swager, J., concurred.